## R. B. ALEXANDER *v.* MARY LEE ALEXANDER

5-5982                                        482 S.W. 2d 818

Opinion delivered July 24 1972

*Thompson & Thompson,* for appellant

*W. J. Walker,* for appellee.

FRANK HOLT Justice. This appeal results from a petition for reduction of alimony and is a sequel to the case of *Alexander* v. *Alexander,* 241 Ark. 741, 410 S. W. 2d 136 (1967). In that case, we approved a decree which granted appellee (1) a divorce, (2) possession of the jointly owned home with the provision that she be responsible for payment of all taxes, insurance and maintenance expenses, (3) one-third of the 53,710 shares of stock owned by appellant on the date of their separation, and (4) alimony in the amount of $100 per month. In affirming that order, it was noted that "appellant and his son had withdrawn in excess of $25,000 from the corporation in less than a year, not counting an expensive boat bought for them or the corporation; that he [appellant] draws an annual salary in excess of $5,000 not counting an expense account and; that he owns real estate of an undisclosed value." Further, "appellee was earning $88.42 per month at the time of the divorce; that the house in

which she lives is in need of extensive repairs and that she is not able to work regularly because of bad health, being afflicted with bronchitis and chronic kidney and bladder trouble."

In September, 1967 (less than a year after the divorce decree was affirmed), appellant secured a reduction in his alimony payments to $80 per month based upon appellee' becoming regularly employed and appellant's assertion that he had no earnings at that time. His only source of income was his expenses which were paid by the family owned corporation. About three years later, appellant's present petition was filed and the alimony award to appellee was further reduced to $40 per month. For reversal of that order, appellant contends that the facts and circumstances in this case do not justify the continuation of any support payments to appellee.

Appellant, age 63, testified that he was no longer employed by Alexander, Inc., and had not received any monies from the corporation since July 9, 1970. During the first six months of 1970, the corporation had paid him a total amount of $4,004. He was currently (February, 1971) receiving $49.60 a week from workmen's compensation. In addition, he had received $600 in disability insurance. At the present time, his only source of income was workmen's compensation. According to him, his physician had advised him that he was unable to return to work. The corporation, which had existed since 1945, had never declared a stock dividend and was presently losing money.

On cross-examination appellant testified that he now is the principal stock holder in the family owned corporation (28,000 shares at .15 a share). He owns a duplex, unrented for three years, on which he makes a $50 per month payment. He receives a total of $120 per month rental income from his sister, her husband, and a third person who live with him in his home. The payment on this house is $146 per month. He has a collection of antique jewelry and watches. The insurance value of the watches is $2,500. A month before the hearing (February,

1971) he had applied for social security benefits and had received no reply.

Appellee testified that she is regularly employed by the Federal Government as a GS-4 (Clerk). Her take-home income is $81 per week. Her health is not good and she did not know how much longer she would be able to continue working. Because of her age, 57, she could not work the minimum time necessary to entitle her to eventual retirement benefits. The 40-year-old home occupied by appellee is owned by appellee and appellant as an estate by the entirety. According to appellee, the insurance is $135 a year and taxes are approximately $200 a year. These expenses together with the necessary repairs and maintenance of the old house were costing her about $80 each month, which was equal to the alimony payment. Further, she has an outstanding dental bill of approximately $300.

Although appellant testified he was unable to work and that his income was limited to $49 per week, his testimony is not treated as uncontradicted. In *Livingston* v. *Livingston,* 247 Ark. 1137, 449 S. W. 2d 396 (1970), we said "the testimony of a litigant or of a party interested in the result of the litigation is not treated as uncontradicted or undisputed." In our prior decision, *Alexander* v. *Alexander, supra,* we quoted with approval this appropriate language:

> "This court has many times announced the rule that in fixing the amount of alimony to be awarded a wide discretion rests with the trial court and unless there appears to be a clear abuse in the exercise of this discretion it will not be disturbed by this court."

In the case at bar, the chancellor was in a superior position to determine the credibility of the witnesses. Furthermore, in doing so the chancellor observed that he could not determine how long appellant would be unable to work; however, "this [alimony] ought to be cut in two, reduced to $40 a month, to help her [appellee] maintain the house, which is for the benefit of both of

them. If she lets it go to ruin, whoever survives wouldn't get much." Therefore, we are unable to say as a matter of law that the chancellor's finding constituted a clear abuse of his discretion.

Affirmed.

BYRD, J., dissents.

GEORGE ROSE SMITH, J., not participating.